Vrej KHACHERIAN; Paylatsun Madaryan; Ovsanna Khacheryan; Arpine Kharcheryan, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondents.

No. 99–71471.
I & NS No. A70–817–267 A70–817–
266 A70–817–265 A70–817–264.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 2000.

Submission Withdrawn April 12, 2001.

Resubmitted Jan. 24, 2002.

Before BRIGHT,* T.G. NELSON, and W. FLETCHER, Circuit Judges.

## MEMORANDUM **

This case is hereby resubmitted for decision.

Vrej Khacherian, his wife Paylatsun Madaryan, and their two children, Ovsanna and Arpine, arrived in the United States from Armenia on July 3, 1993. Shortly thereafter, the family filed a Request for Asylum, alleging that Vrej had been politically active as a member of the Opposition Party in Armenia and that it was therefore unsafe for him to return to that country. The INS denied the asylum request and served the Khacherians with an Order to Show Cause. The Khacherians, represented by counsel, appeared before an Immigration Judge ("IJ") on November 2, 1995. At the hearing, they withdrew their asylum application, conceded deportability, and obtained a voluntary departure order. They failed to depart pursuant to the voluntary departure order.

Over a year after their specified departure date, Paylatsun Madaryan received notice that she had been selected for a diversity visa. When she filed for·adjustment of status, however, the INS told her that the adjustment could only be done by an IJ. Accordingly, the Khacherians filed a motion *in pro per* to reopen proceedings before the IJ. They alleged that they were unaware that they were under deportation status, and that they had been misled by their former counsel. The IJ denied the motion because he found it was time-barred under 8 C.F.R. § 3.2(c)(2). The

INS then issued another deportation order effective June 18, 1997.

The Khacherians retained counsel and appealed the IJ's decision to the BIA. After switching attorneys again, however, the family withdrew this first appeal in order to file a second motion to reopen before the IJ. In the second motion, the Khacherians claimed that they had withdrawn their initial asylum application on the advice of a non-lawyer named "Vahe." They also claimed that their original attorney had rendered ineffective assistance. The IJ denied the second motion to reopen, pointing out that immigration regulations allow aliens only one such motion. *See* 8 C.F.R. § 3.2(c)(2) (1996). The Khacherians appealed to the BIA, which affirmed and declined to exercise its power to reopen the case *sua sponte.* The Khacherians appeal these decisions. Because the BIA conducted an independent review of an IJ's findings, we review the BIA decision, not that of the IJ. *See Cordon–Garcia v. INS,* 204 F.3d 985, 990 (9th Cir.2000).[1] We reverse.

I

We review a refusal to reopen deportation proceedings for abuse of discretion. *INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). Immigration regulations allowed the Khacherians a single motion to reopen as of right, to be filed within ninety days of the "final administrative order of deportation," or before September 30, 1996, whichever was later. 8 C.F.R. § 3.2(c)(2); *id.*

---

* Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. This appeal is governed by IIRIRA's "transitional changes in judicial review" because the initial order to show cause was dated prior to IIRIRA's general effective date of April 1, 1997, and because the BIA's decision on October 18, 1999 was issued after October 30, 1996.

§ 3.23(b)(1). If the INS is correct that the Khacherians waived appeal at their initial hearing, then the IJ's order became "final" on November 2, 1995. *See* 8 C.F.R. § 3.39. If, instead, the Khacherians did not waive appeal, then the order became final on December 2, 1995, when the period for filing an appeal ended. *See* 8 C.F.R. § 3.38. In either case, the deadline for filing a motion to reopen was September 30, 1996. *See* 8 C.F.R. § 3.2(c)(2). Since the Khacherians' motions to reopen were dated March 10, 1997, and June 17, 1997, respectively, they were therefore untimely.

The Khacherians argue that the IJ's first order was never "final" because he failed to inform them of their right to appeal, thereby preventing the time for appeal from running. While INS regulations do require that aliens be informed of their right to appeal the result of deportation hearings, *see* 8 C.F.R. § 3.3(a)(1); 8 C.F.R. § 242.19 (1995), the Khacherians cite no case law indicating that failure to notify an alien of the right means that the time period for the appeal does not begin to run. Nor do they fall within any of the listed exceptions to the time and number bars on motions to reopen. *See* 8 C.F.R. § 3.2(c)(3). Accordingly, we find that the BIA did not abuse its discretion in denying the motions to reopen.

## II

The Khacherians also allege that the failure to inform them of their right to appeal invalidates their deportation proceedings and violates their right to due process. We review matters of law and claims of due process violations in deportation proceedings *de novo*. *Castillo–Perez v. INS*, 212 F.3d 518, 523 (9th Cir.2000).

Even if the IJ did mistakenly fail to inform the Khacherians of their right to appeal,[2] in violation of 8 C.F.R. § 3.3(a)(1) and 8 C.F.R. § 242.19 (1995), that violation invalidates proceedings only if it prejudiced interests protected by the regulations. *See Calderon–Medina*, 591 F.2d at 531. Prejudice occurs when an aliens' rights are transgressed in a way that is likely to impact the proceedings. *Jacinto v. INS*, 208 F.3d 725, 728 (9th Cir.2000). We find nothing in the record to indicate that the Khacherians would have timely appealed the result of their hearing if they had been notified of that right. In order to appeal, the family would have had to file a Notice of Appeal within thirty calendar days of the IJ's oral decision or the mailing of his written decision. It appears, however, that their desire to revisit the proceedings arose only when Paylatsun Madaryan was barred from adjusting status because of her failure to depart as ordered. Since this occurred eight months after the deportation hearing, her time for appeal had already run. We therefore find no prejudice.

We also find untenable the Khacherians' claim that the failure to notify them of their right of appeal violates due process. Due process does require that an alien be *allowed* to appeal an IJ's decision. The Khacherians argue that the IJ violated that right by failing to notify them of the right and by assuming that they had waived it. We reiterate that the family's desire to appeal began only when Paylatsun Madaryan found herself barred from

2. The deportation hearing transcript shows that after IJ granted the Khacherians voluntary departure, he stated that he "assume[d] there is no appeal" and declared that his order was final. His written order indicated his belief that the Khacherians had waived appeal. While this assumption seems understandable in light of the fact that the IJ had given the Khacherians everything that they had asked for, it is not clear that the family or their lawyer ever explicitly waived their right to appeal.

adjusting status—long after the time for appeal had ended. Since a due process violation occurs "only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case," *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir.1985), we find that even if the IJ did improperly fail to inform the Khacherians of their right to appeal, that failure did not violate the family's rights.

### III

■ The Khacherians argue next that the statutes of limitations on their motions to reopen were tolled by the conduct of Vahe, who, they contend, gave them mistaken legal advice. We have tolled statutes of limitations on motions to reopen where such motions were delayed because of inadequate legal assistance given by a person who fraudulently poses as an attorney. *See Varela v. INS*, 204 F.3d 1237, 1240 (9th Cir.2000); *Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir.1999). The Khacherians do not claim that Vahe held himself out as an attorney, and they admit that they were represented by a bona fide attorney at their hearing. Moreover, nothing in the petitioners' briefs supports their contention that Vahe's conduct was fraudulent. We therefore decline to toll the relevant statutes of limitations on the basis of Vahe's conduct.

### IV

The Khacherians make several arguments based on a claim of ineffective assistance by attorney Heinrich Davis at their deportation hearing—including the contention that Davis' ineffective representation should toll the ninety-day limitations period for the motion to reopen. We have held that the filing period for motions to reopen is subject to equitable tolling in cases where the applicant was prejudiced by ineffective assistance of counsel. *See*

*Socop–Gonzalez v. INS*, 272 F.3d 1176 (9th Cir.2001) (en banc).

The Khacherians have satisfied in substantial part the procedural requirements for ineffective assistance claims imposed by *Matter of Lozada*. 19 I. & N. Dec. 637 (BIA 1988). We review ineffective assistance claims *de novo;* a counsel's performance at deportation proceedings is ineffective "only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir.1985). To prevail on their claim of ineffective assistance of counsel, the Khacherians must show both error and prejudice. *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir.2000).

The Khacherians contend that no competent immigration attorney would have foregone an asylum application as strong as theirs in favor of seeking voluntary departure. They support this claim by noting that the INS form letter denying the Khacherians asylum admits that they had been persecuted in the past. The Khacherians point out that a finding of past persecution creates a presumption that a fear of future persecution is well founded, and shifts the burden to the government to rebut the presumption with evidence that circumstances have changed. *See, e.g., Matter of Chen*, 20 I. & N. Dec. 16 (BIA 1989). In light of this legal standard, Davis' failure to advise the Khacherians against withdrawing their application was undoubtedly bad advice. It also prejudiced the Khacherians. If the Khacherians had not withdrawn their asylum application based on Davis' advice, they almost certainly would not have been under a deportation order at the time they were eligible for a diversity visa. They need not even have won the asylum claim; even if the IJ had denied their claim, the appeals process would easily have consumed the

year between November 1995 and November 1996, at which time they applied for adjustment of status. Thus, if they had not withdrawn their asylum application, the Khacherians would almost certainly have successfully adjusted their status through the diversity visa.

The Khacherians claim that Davis never discussed with them their deportation hearing or their asylum case. The BIA has held in a separate case that Davis' failure to consult with a client before withdrawing an asylum claim, in almost identical circumstances, constitutes ineffective assistance of counsel warranting the reopening of deportation proceedings. In that separate case, *In re: Khatchatrian*, Nos. A70 8181 897+ (BIA Sept. 27, 2000), the BIA held:

> [I]t was ineffective assistance of counsel for Heinrich Davis to represent the respondent at the deportation hearing without consulting with him prior to the withdrawal of the asylum application based on the advice of an immigration consultant. Without evidence of consultation, we cannot find that the decision to withdraw the asylum claim was the result of a tactical decision by the attorney. There is no reason apparent from the record why the respondent could not have presented an asylum claim and still obtained voluntary departure if it was denied.

*In re: Khatchatrian*, at 3.

 In light of the error and prejudice resulting from Davis' performance, and of the BIA's decision regarding virtually identical conduct by Davis in another case, we believe that Davis rendered ineffective assistance to the Khacherians in this case. Because the ineffective assistance of counsel had direct consequences on the Khacherians' ability to adjust their status, we hold that the ninety-day filing period should be equitably tolled to allow the Khacherians to move to reopen proceedings before the IJ.

## V

Because we hold that the BIA should have equitably tolled the ninety-day filing period, we do not reach the question whether the BIA should have exercised its *sua sponte* power to reopen.

PETITION GRANTED. The decision of the BIA is REVERSED and the case is REMANDED to the BIA with instructions to consider the motion to reopen on its merits.